## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| RALPH T. WILMAS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:20-CV-1020 PLC |
| | ) | |
| ANNE PRECYTHE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court upon the motion of self-represented plaintiff Ralph T. Wilmas, Jr. for leave to commence this action without prepayment of the required filing fee. Having reviewed the motion and the financial information submitted in support, the Court will grant the motion and assess an initial partial filing fee of $95.96. *See* 28 U.S.C. § 1915(b)(1). who For the reasons discussed below, the Court will issue process on plaintiff's claims against defendants Todd Renshaw and Nurse Karen Rose and dismiss the remaining claims in plaintiff's complaint. *See* 28 U.S.C. § 1915(e)(2)(B).

### Initial Partial Filing Fee

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly

payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff has submitted an affidavit and a certified copy of his prison account statement for the six-month period immediately preceding the submission of his complaint. A review of plaintiff's account indicates an average monthly deposit of $479.80. Plaintiff has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee of $95.96.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, is malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

When reviewing a self-represented litigant's complaint under 28 U.S.C. § 1915, the Court accepts the well-pled facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir.

2015).  However, even self-represented complaints are required to allege facts which, if true, state a claim for relief as a matter of law.  *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for self-represented plaintiff that assumed facts that had not been pleaded).

## The Complaint

Plaintiff is an inmate currently confined at Eastern, Reception Diagnostic and Correctional Center (ERDCC). Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights. He names twelve individuals as defendants in this action: Anne Precythe (Director of the Missouri Department of Corrections (MODOC)); Todd Renshaw (Supervisor, Corizon, LLC); Karen Rose (Nurse Practitioner); Unknown Zakroff[1] (Doctor, Corizon, LLC); Unknown Adams (Nurse, Corizon, LLC); Unknown Thomas (Mental Health Expert, Corizon, LLC); Unknown Morgan (Major, MODOC); Unknown Cliff (Correctional Officer, MODOC); Ralph Salke (Site Director, Corizon, LLC); John Does A-C (Utilization Management Team, Corizon LLC). Plaintiff sues defendants in their individual and official capacities.

### A.  Medical Claims Relative to Plaintiff's Hemorrhoids

Plaintiff asserts that he has suffered with chronic hemorrhoids since 1990. He states that he was at first issued suppositories and hemorrhoid cream for his medical issues; however, around 2005 he began to ask for surgery to remove the hemorrhoids. Plaintiff does not indicate which medical provider he sought surgery from at that time.

Plaintiff claims that an unnamed doctor at Northeast Correctional Center (NECC), told plaintiff that he had "placed a referral for surgery" but the request for surgery was denied. Plaintiff

---

[1]Plaintiff spells Dr. Zakroff's name several different ways in his complaint. However, in the Grievance Response dated January 6, 2020, this defendant's name is spelled Zakroff. The Court will instruct the Clerk to correct the spelling on the docket.

asserts that the unnamed doctor told him "Corizon doesn't want to perform major medical costs with inmates doing 'life sentences' if it is non-life threatening." The doctor purportedly told plaintiff to wait another year and he would ask for surgery again. Plaintiff states that when the next year came, the doctor no longer worked for Corizon, LLC.

Plaintiff states that in 2012, he was housed at ERDCC, and he "repeatedly renewed his request for surgery on his hemorrhoids. Plaintiff does not indicate to whom he "renewed his requests."

Plaintiff alleges that his hemorrhoids were "hanging out of his rectum all day long." He claims that instead of ordering surgery, unnamed medical personnel provided him with suppositories and hemorrhoid cream. He claims that in 2015, he wrote to Corizon, LLC's Medical Administrator, Todd Renshaw relating to the unfairness of constantly being denied "adequate and effective treatment for hemorrhoids, *i.e.*, surgery. Plaintiff states that after writing to Renshaw, he was called into medical and provided additional cream, which he rejected. Plaintiff does not indicate whether he received a response to his letter from defendant Renshaw.

Plaintiff alleges that on August 24, 2017, he went to see Dr. Unknown Lovelace[2] at ERDCC, and Dr. Lovelace examined his hemorrhoids, finding that there were five hemorrhoids, the largest being 5/8th of an inch in diameter, and four others measuring approximately 1/4th of an inch. Dr. Lovelace purportedly told plaintiff he would seek a referral from Corizon, LLC for surgical removal of the hemorrhoids. Plaintiff states that Dr. Lovelace told him several weeks later that Corizon, LLC's Utilization Management Team denied the request for surgery.[3] When plaintiff

---

[2]Dr. Lovelace is not named as a defendant in this action, and the Court will not treat him as such.

[3]Although plaintiff names as defendants in this action John Does A-C, and he asserts that their job titles are "Utilization Management Team," plaintiff does not make any claims against these John Does in his complaint regarding their roles on the Utilization Management Team. Rather, plaintiff mentions John Doe A only twice in his complaint, under his Claims for Relief. He states that John Doe A subjected him to humiliation when he acted with defendant Morgan by requiring him to provide details of his medical information in front of other inmates. This assertion does not match plaintiff's claims regarding the Utilization Management Team.

asked why the surgery had been denied, plaintiff was purportedly told by Dr. Lovelace that the hemorrhoids were not "big enough." Plaintiff claims he then sought a cushion to relief the pain of sitting, but he was told Corizon would not approve the purchase. Plaintiff does not indicate whether it was Dr. Lovelace who denied him the cushion or if it was a different medical professional.

Plaintiff asserts that on July 9, 2019, he renewed his request for hemorrhoid surgery to Nurse Karen Rose. Nurse Rose purportedly told plaintiff that she used to work for a hemorrhoid surgeon, and she stated that he was "better off just washing them and stuffing them back up his butt because surgery won't help – they will just come back." Plaintiff claims that Nurse Rose also told him that all medical staff, including Todd Renshaw and Dr. Zakroff, had just met with the executive management of Corizon, LLC, and she allegedly told plaintiff that they were told, "if the inmate isn't dying don't issue anything that is a major cost." Plaintiff claims that Nurse Rose even told him that gel insoles would not be given to inmates with long-term sentences. She allegedly said, "You will just have to learn to deal with the pain of hemorrhoids."

Prior to Nurse Rose examining plaintiff, she allegedly called a guard and another nurse in the room to watch the examination. Plaintiff claims she was very rough when doing the rectal exam, and she then told him, "You don't have any hemorrhoids. Just learn to not make a big deal about it. Don't act like a baby."

On November 12, 2019, plaintiff claims he finally received access to his medical records from Todd Renshaw. He claims he saw approximately twenty (20) formal requests for hemorrhoid treatment and five (5) medical notes relating to "hemorrhoids bleeding and large in size." However, plaintiff did not see a single reference to Dr. Zakroff or any doctors' referrals for hemorrhoid surgery.  Plaintiff states that when he asked Renshaw why these referrals were missing from his medical file, Reshaw shrugged his shoulders. Plaintiff also noticed that there was never any plan for treatment of his hemorrhoids within his medical records.

- 5 -

**B.  Medical Claims Relative to Plaintiff's Boils**

Plaintiff claims that from 1990-1998 he began to break out in what appeared to be boils under his armpits, eyes, and groin area. He states that he constantly complained about the problem to medical staff. However, they "never attempted to send him to see" an outside doctor, nor was any attempt "made to diagnose this problem." Plaintiff claims that the boils filled up with "milky-water fluid" that burned. He states that with time, the boils would dry up. Plaintiff states that he still gets boils. However, he has not stated how often he gets boils today. Plaintiff has also not indicated if he has sought medical treatment for the boils recently or what he has been told by any of his doctors regarding his boils.

**C.  Mental Health Care Claims**

Plaintiff states that around 2016 he began to seek mental health assistance for "worsening depression." Although plaintiff does not indicate the date, he states that "he first saw Ms. Thomas, when she enrolled him in an Anger Management Program." Plaintiff claims that Ms. Thomas told him that each time he experienced depression and wanted help he would have to fill out a medical request form. Plaintiff claims he told Ms. Thomas that her program was "inadequate" and dealt with anger and not depression. He alleges that Ms. Thomas told him that in order to access individual counseling he would have to fill out a medical request form and wait for Corizon Medical to respond.

Plaintiff alleges that he was told by a fellow inmate on August 10, 2018, that he was feeling depressed. On August 15, 2018, that inmate committed suicide by throwing himself off a two-story housing unit walkway and was instantly killed. Plaintiff alleges that depression is a rampant problem within the Missouri Department of Corrections.

Plaintiff asserts that from 2014-2018 he raised his concerns about MDOC and Corizon not responding effectively or timely to inmates struggling with depression. During this timeframe,

former warden Troy Steele, and current assistant warden, Matthew Pultz, said that the suicides and drug overdoses among inmates was because they were "idiots." Plaintiff states that he renewed his concern with new warden, Stan Payne in 2018.[4] He also claims to have written to Missouri legislators about the issue. However, plaintiff does not indicate that he actually filed a medical request regarding his need for counseling for depression. Plaintiff has also not indicated that he currently suffers from depression or that he is in need of treatment for mental health difficulties.

### D.  Medical Claims Relative to Plaintiff's Hip

Plaintiff claims that from 2014 to present, he complained to medical personnel at ERDCC about severe pain in his right hip area. He states that during this time, he was seen by nurse practitioners Karen Rose and Ms. Unknown Adams, as well as Dr. Zakroff. Over this time, plaintiff claims that "several X-rays" were ordered, and plaintiff was told that there was a little inflammation, but nothing serious.

In 2018, plaintiff claims that he was placed on a prescription anti-inflammatory, Meloxicam. He claims that he continued to complain about hip pain, but he was told by Dr. Zakroff and Ms. Adams that his hip was not getting any worse, based on new X-rays. Plaintiff asserts that despite the medical providers' assertions, he began to limp, due to the "excruciating pain." On or about July 2019, plaintiff saw Ms. Adams again, and he again discussed plaintiff's hip complaints. Plaintiff told her again that it was his 'right hip" that hurt. She told him at that time that the X-rays that had been done were of his left hip. Plaintiff does not indicate, however, what occurred after the mistake came to light. However, he does state that his request for "shoe insoles" was denied. Plaintiff does not state who denied his request for insoles. Plaintiff also does not indicate why he requested the insoles or if they were medically indicated for hip pain. As stated previously, plaintiff

---

[4]Plaintiff did not include Stan Payne, Troy Schulz or Matt Pultz as defendants in this action, and the Court will not include them as such.

notes that he discussed the issue of insoles with Nurse Rose on July 9, 2019, at which time she stated that "even insoles would not be given to inmates with long-term sentences."

### E.  Denial of Privacy Claims

Plaintiff asserts that from 2002 to present, plaintiff was forced to describe his medical complaints in front of other inmates and custodial staff in the waiting room prior to getting in to see medical personnel. Plaintiff asserts that doing so was extremely humiliating. He states that correctional officers stationed at the processing desk were ordered by custody supervisors, including Major Morgan, to require inmates to state the reasons "why" they required medical assistance and were not allowed to see medical personnel if they didn't disclose the reason why they wanted to see medical personnel.

Plaintiff complains that defendant Morgan is also responsible for assigning defendant Cliff to the medical area, and it was defendant Cliff's job to also collect information from the prisoner's prior to gaining access to treatment.

Plaintiff claims he was forced to disclose information in front of inmates and staff such as his anal bleeding, swollen rectum and how he had to push hemorrhoids back up daily.

### F.  Relief Requested

Plaintiff seeks compensatory and punitive damages as well as injunctive relief.

### Discussion

Having carefully reviewed and liberally construed plaintiff's allegations, the Court will partially dismiss plaintiff's claims pursuant to 28 U.S.C. § 1915(e)(2)(B).

The Court will dismiss all of plaintiff's allegations brought prior to July 2015, as these allegations are time-barred. These include all of plaintiff's medical claims relating to his boils. Additionally, the Court will dismiss plaintiff's claims against defendants Anne Precythe, Dr. Zakroff ; Nurse Adams; Ms. Unknown Thomas; Major Unknown Morgan; Correctional Officer

Unknown Cliff; Ralph Salke; and John Does A-C. The Court will, however, issue process on plaintiff's claims against defendants Todd Renshaw and Nurse Karen Rose.

### A.  Medical Claims Arising Prior to July 2015 Are Time-Barred

Plaintiff seeks damages for alleged constitutional violations for purported deliberate indifference to his serious medical needs that occurred in prior to July 2015. Section 1983 claims are analogous to personal injury claims and are subject to Missouri's five-year statute of limitations. *See Sulik v. Taney County, Mo.*, 393 F.3d 765, 766-67 (8th Cir. 2005); Mo. Rev. Stat. § 516.120(4). "Although the statute of limitations is an affirmative defense, a district court may properly dismiss an in forma pauperis complaint under 28 U.S.C. § 1915 "when it is apparent the statute of limitations has run." *Myers v. Vogal*, 960 F.2d 750, 751 (8th Cir. 1992). As these claims are outside the statute of limitations, the Court cannot consider those claims.

Thus, any claims relating to plaintiff's boils, are subject to dismissal as plaintiff has not provided any factual information relative to his alleged boils except for the time periods between 1990-1998.

Additionally, plaintiff may not bring any claims for denial of medical or mental health care against defendants prior to the time period of July 2015 in this action. For ease of reference, for the remainder of this Memorandum and Order, the Court will only address the time period between July 2015 and present. Moreover, the Court will only address plaintiff's claims for deliberate indifference to his serious medical needs with relation to his hip, his hemorrhoids and his mental health. Plaintiff's claims relating to his privacy rights will also be addressed from 2015 to the present.

### B.  Plaintiff Has Failed to Allege Particular Claims Against Defendants Ralph Salke, Anne Precythe, and John Does A-C

Plaintiff fails to allege how defendants Anne Precythe, Ralph Salk, Unknown Thomas, and John Does A-C of the Utilization Management Team were personally involved in or directly

responsible for the alleged constitutional violations. Instead, plaintiff merely lists their names in the complaint and then states that "defendants" collectively violated his rights. Plaintiff is unable to substantiate claims for relief with such pleading practice.

"Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff); *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (respondeat superior theory inapplicable in § 1983 suits).

Plaintiff must state how each defendant was directly responsible for the alleged medical mistreatment. "It is not enough to allege that 'defendants' refused to treat his injuries.  A federal complaint must contain the 'who, what, when and where' of what happened, and each defendant must be linked to a particular action."  *Drummer v. Corizon Corr. Health Care*, 2016 WL 3971399, at *1 (E.D. Mo. July 25, 2016); *see also  Miles v. Corizon Healthcare*, 2019 WL 2085998, at *4 (E.D. Mo. May 13, 2019) (a general refusal to treat allegation, without any additional information, is nothing more than a conclusory statement and cannot suffice to state a cause of action under the Eighth Amendment).

Plaintiff's complaint lacks any factual information relative to his claims relating to defendants Ralph Salke, Anne Precythe and John Does A-C. Although, this Court must liberally construe self-represented complaints, the Court will not create facts or construct claims that have not been alleged.  *See Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004). Accordingly, plaintiff's claims against these defendants are subject to dismissal.

### C.  Official Capacity Claims Against Corizon, LLC Defendants

Plaintiff brings this action against defendants in both their official and individual capacities. He asserts that the Corizon, LLC defendants have been deliberately indifferent to his serious medical needs for the past several years with respect to his hip, his hemorrhoids and his mental health needs. The Corizon, LLC defendants include:  Todd Renshaw; Nurse Karen Rose; Dr. Zakroff; Nurse Adams and Unknown Thomas. Naming an official in his or her official capacity is the equivalent of naming the entity that employs the official. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  In this case, Corizon, LLC employs these defendants.

Corizon, LLC is a private entity that contracts with the Missouri Department of Corrections to provide healthcare services to inmates. "A corporation acting under color of state law cannot be liable on a *respondeat superior* theory." *Smith v. Insley's Inc.*, 499 F.3d 875, 880 (8th Cir. 2007). Rather, to support a claim against such a corporation, the plaintiff "must show that there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006).  *See also Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993) (stating that a corporation acting under color of state law will only be held liable where "there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983").

"Policy" refers to an "official policy, a deliberate choice of a guiding principle or procedure made by the . . . official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016).  For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise.  *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face . . . a plaintiff must establish the existence of a 'policy' by demonstrating

that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.* at 390.

> In order to establish an unconstitutional custom, plaintiff must demonstrate:
>
> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the…entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the…entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That plaintiff was injured by acts pursuant to the…entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*See Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Plaintiff has made various claims against the Corizon, LLC defendants. The Court will address the medical claims relating to plaintiff's hemorrhoid issues first.

Plaintiff claims that in 2015, he wrote to Corizon Medical Administrator, Todd Renshaw relating to the unfairness of constantly being denied "adequate and effective treatment for hemorrhoids, *i.e.,* Corizon's failure to provide surgery for his hemorrhoids. Plaintiff also asserts that he complained to Renshaw in November of 2019 that there were referrals missing from his medical file for hemorrhoid surgery.[5] He claims that Renshaw simply shrugged his shoulders. Plaintiff alleges in his complaint that Todd Renshaw is responsible for making referrals to Corizon's Utilization Management Team for providing care when an inmate needs specialized treatment.

Plaintiff asserts that on July 9, 2019, he renewed his request for hemorrhoid surgery to Nurse Karen Rose. Plaintiff asserts that Nurse Rose told him that all medical staff, including Todd

---

[5] In his complaint, plaintiff states that he saw in his medical records, "approximately 20 formal requests for hemorrhoid treatment and 5 medical notes relating to 'hemorrhoids bleeding and large in size.'" However, there was not a single request in his file for hemorrhoid surgery.

Renshaw and Dr. Zakroff, had just met with the executive management of Corizon, and that they were told, "if the inmate isn't dying don't issue anything that is a major cost." Plaintiff claims that Rose even told him that gel insoles would not be given to inmates with long-term sentences. She allegedly said, "You will just have to learn to deal with the pain of hemorrhoids."

Plaintiff states that he pressed Nurse Rose to make a referral for surgery for his hemorrhoids. Prior to Nurse Rose examining plaintiff, she allegedly called a guard and another nurse in the room to watch the examination.[6] Plaintiff claims she was very rough when doing the rectal exam, and she then told him, "You don't have any hemorrhoids. Just learn to not make a big deal about it. Don't act like a baby."

After reviewing plaintiff's medical claims relating to the lack of hemorrhoid care in their entirety, it is apparent that he is claiming that there is a Corizon policy prohibiting its medical professionals from having the authority to send plaintiff to a specialist for (hemorrhoidal) surgery to save money. The Court will issue process on the official capacity claims against defendants Todd Renshaw and Nurse Karen Rose for these claims.

The Court will now turn to the official capacity claims of Nurse Adams and Dr. Zakroff. These claims relate only to plaintiff's denial of medical care relating to his hip pain.

Plaintiff claims that in 2018 he was placed on a prescription anti-inflammatory, Meloxicam. He claims that he continued to complain about hip pain, but he was told by Dr. Zakroff and Nurse Adams that his hip was not getting any worse, based on new X-rays. Plaintiff asserts that despite the medical providers' assertions, he began to limp, due to the "excruciating pain." On or about July 2019, plaintiff saw Nurse Adams again, and he again discussed his hip complaints. Plaintiff told her again that it was his 'right hip' that hurt. She told him at that time that the X-rays

---

[6]There is nothing inherently unconstitutional with having a correctional officer in the room during an inmate's medical exam or being shackled during such an exam. *See, e.g., Bosworth v. U.S.*, 2014 WL 4384694, *7 (C.D. Cal. Sept. 4, 2014); *Odell v. Litscher*, 2003 WL 23282749 at *4 (W.D.Wis. Jan.6, 2003).

that had been done were of his left hip. Plaintiff does not indicate, however, what occurred after the mistake came to light. However, he does state that his request for "shoe insoles" was denied. Plaintiff does not state who denied his request for insoles or if insoles were the proper treatment for his hip pain. As stated previously, plaintiff notes that he discussed the issue of insoles with Nurse Rose on July 9, 2019, at which time she stated that "even insoles would not be given to inmates with long-term sentences."

After reviewing these claims, the Court will dismiss the official capacity claims against Dr. Zakroff and Nurse Adams. Plaintiff has failed to allege that a policy or custom of Corizon was responsible for the denial of the medical care for his hip pain. Rather, the facts in his complaint relate only to an individualized failure to treat his pain, which the Court will address against these defendants in their individual capacities, *infra*.

Last, the Court will address the official capacity claims against defendant Thomas, the last Corizon, LLC employee. Plaintiff states that around 2016 he began to seek mental health assistance for "worsening depression." Although plaintiff does not indicate the date, he states that "he first saw Ms. Thomas, when she enrolled him in an Anger Management Program." Plaintiff claims that Ms. Thomas told him that each time he experienced depression and wanted help he would have to fill out a medical services form in order to receive individual counseling rather than group counseling.

Plaintiff alleges that he was told by a fellow inmate on August 10, 2018, that he was feeling depressed. On August 15, 2018, that inmate committed suicide by throwing himself off a two-story housing unit walkway and was instantly killed. Plaintiff alleges that depression is a rampant problem within the Missouri Department of Corrections, and that Corizon and MDOC don't always respond in a timely manner. Plaintiff, however, does not indicate how "timely" inmates with depression are responded to by Corizon, LLC.

- 14 -

Plaintiff asserts that from 2014-2018 he raised his concerns about MDOC and Corizon not responding effectively or timely to inmates struggling with depression. During this timeframe, former warden Troy Steele, and current assistant warden, Matthew Pultz, said that the suicides and drug overdoses among inmates was because they were "idiots." Plaintiff states that he renewed his concern with new warden, Stan Payne in 2018. He also claims to have written to Missouri legislators about the issue. However, plaintiff does not indicate that he actually filed a medical request regarding his need for counseling for depression. Plaintiff has also not indicated that he currently suffers from depression or that he is in need of treatment for mental health difficulties.

Plaintiff's titles his claim, "denial of mental health care." However, he has not stated that there is a policy or custom of denial of mental health care within the Missouri Department of Corrections or at Corizon, LLC.  His complaint is that Corizon doesn't always respond in a timely manner, but he has failed to identify exactly what "timely" is relative to when an inmate seeks help from Corizon or the Department of Corrections. Additionally, plaintiff, himself, has failed to allege that submitted a health service request to Corizon for counseling or treatment and that Corizon failed to respond to his request in a timely manner or denied him care.

Thus, this Court is unable to state that plaintiff has properly plead a policy or custom claim against Corizon in this instance. The Court will therefore dismiss the official capacity claim against defendant Ms. Thomas.

In light of the aforementioned, plaintiff's official capacity claims against Ms. Thomas, Dr. Zakroff and Nurse Adams will be dismissed. However, process will issue on plaintiff's official capacity claims against Nurse Karen Rose and Todd Renshaw.

### D. Official Capacity Claims Against the Remaining Missouri Department of Corrections Defendants

Plaintiff has sued the Missouri Department of Corrections defendants in their official, as well as individual, capacities. Plaintiff's official capacity claims against Major Morgan and

Correctional Officer Cliff are subject to dismissal because they are employed by the State of Missouri. Naming an employee of the MDOC in his or her official capacity is the equivalent of bringing a claim against the State of Missouri. *See Will v. Michigan Dep't State of Police*, 491 U.S. 58, 71 (1989). Because the MDOC is an agency exercising state power, it is not a "person" subject to a suit under § 1983. *See e.g.*, *Barket, Levy & Fine, Inc. V. St. Louis Thermal Energy Corp.*, 948 F.2d 1084, 1086 (8th Cir. 1991). *See also Walker v. Missouri Dep't. of Corrections*, 213 F.3d 1035, 1036 (8th Cir. 2000) (affirming district court dismissal of the MDOC because it is not a suable entity); *Alsbrook v. City of Maumelle,* 184 F.3d 999, 1010 (8th Cir. 1999) (en banc) (§ 1983 suit cannot be brought against state agency), *cert. dismissed*, 529 U.S. 1001 (2000). Therefore, plaintiff's official capacity claims against defendants Morgan and Cliff are subject to dismissal.

### E. Individual Capacity Claims

#### 1. Dr. Zakroff, Nurse Rose and Nurse Adams

Plaintiff brings claims for deliberate indifference to his serious medical needs with relation to his hip and his hemorrhoids with respect to Dr. Zakroff, Nurse Adams and Nurse Rose in their individual capacities. The first time he mentions these individuals are with respect to his hip pain.

Plaintiff claims that from 2015 to present, he complained to medical personnel at ERDCC about severe pain in his right hip area. He states that during this time, he was seen by nurse practitioners Karen Rose and Unknown Adams, as well as Dr. Zakroff. Over this time, plaintiff claims that "several X-rays" were ordered, and plaintiff was told that there was a little inflammation, but nothing serious.

Plaintiff claims that in 2018 he was placed on a prescription anti-inflammatory, Meloxicam. He claims that he continued to complain about hip pain, but he was told by Dr. Zakroff and Nurse Adams that his hip was not getting any worse, based on new X-rays. Plaintiff asserts

that despite the medical providers' assertions, he began to limp, due to the "excruciating pain." On or about July 2019, plaintiff saw Nurse Adams again, and he again discussed his hip complaints. Plaintiff told her again that it was his 'right hip" that hurt. She told him at that time that the X-rays that had been done were of his left hip. Plaintiff does not indicate, however, what occurred after the mistake came to light. However, he does state that his request for "shoe insoles" was denied. Plaintiff does not state who denied his request for insoles or if show insoles were a prescribed treatment for hip pain. As stated previously, plaintiff notes that he discussed the issue of insoles with Nurse Rose on July 9, 2019, at which time she stated that "even insoles would not be given to inmates with long-term sentences."

A prison official's deliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment. *Alberson v. Norris*, 458 F.3d 762, 765-66 (8th Cir. 2006). A prima facie case alleging deliberate indifference requires the inmate-plaintiff to demonstrate that he suffered from an objectively serious medical need and the "prison officials actually knew of but deliberately disregarded" that need. *Id.* Medical malpractice alone, however, is not actionable under the Eighth Amendment. *Smith v. Clark*, 458 F.3d 720, 724 (8th Cir. 2006).

For a claim of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). Showing medical malpractice is not enough: "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Thus, to state a claim against Dr. Zakroff, Nurse Adams and Nurse Rose, plaintiff must allege his condition was objectively serious and they deliberately disregarded any need of which they were aware.

Plaintiff has admitted that he was treated with a prescription anti-inflammatory for his hip pain from 2018 on, and that X-rays were done on his hip on several occurrences to ascertain any change in his bones. Plaintiff does state that on one occasion, on or about July of 2019, he was told that the X-rays showed that they were done on the wrong hip. However, a complaint that a physician or medical provider has been negligent in diagnosing a medical condition is not enough to show a constitutional violation. *See Estelle*, 429 U.S. at 106 (1976).  Moreover, although plaintiff complains that he was denied insoles for his hip pain, there is no indication that his chosen form of treatment, the insoles, would have provided him relief for the pain.

"While inmates have a right to adequate medical care, they have no "right to receive a particular or requested course of treatment." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). Doctors are free to exercise their independent medical judgment, *id.*, and a "prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Meuir v. Greene Cty. Jail Emps.*, 487 F.3d 1115, 1118-19 (8th Cir. 2007) (alteration in original) (citation omitted).  *See also Barnett v. Hill*, 2019 WL 2058724, at *7 (E.D. Mo. May 9, 2019) (failure to prescribe pain medication when requested is not deliberate indifference of an inmate's medical needs).  Consequently, plaintiff's allegations indicate only a disagreement over treatment methods or-at best-negligence in treating his condition. As such, the Court finds that plaintiff has not properly alleged a deliberate indifference to his medical care with respect to his hip pain as to defendants Dr. Zakroff, Nurse Adams or Nurse Rose.

Next the Court will review plaintiff's allegations that these three defendants, Dr. Zakroff, Nurse Adams and Nurse Rose, were deliberately indifference to his request for hemorrhoid treatment.

For purposes of initial review, the Court will assume hemorrhoids meet the criteria for an objectively serious medical need.  However, there is nothing in plaintiff's complaint to establish that Dr. Zakroff or Nurse Adams were deliberately indifferent to that need. The Court has combed through plaintiff's complaint and not once in his complaint did plaintiff specify that he asked for and was denied treatment for his hemorrhoids by Dr. Zakroff or Nurse Adams. The lack of these claims in his complaint is deficient to plaintiff's case for relief.  Thus, plaintiff's allegations against defendants Dr. Zakroff and Nurse Adams in their individual capacities for deliberate indifference to his serious medical needs relative to his hemorrhoidal issues fails to state a claim upon which relief may be granted.

Plaintiff's vague and conclusory allegations that he is a victim of "all of the defendants failure to treat him" or that "defendants" as a whole "failed to provide him care" cannot provide the basis for a claim for deliberate indifference and is not entitled to the presumption of truth. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009). Even *pro se* plaintiffs are required to allege facts in support of their claims, and the Court will not assume facts that are not alleged.  *See Stone v. Harry,* 364 F.3d 912, 914-15 (8th Cir. 2004).

Plaintiff does, however, assert that he was denied appropriate care by Nurse Rose for his hemorrhoids. Plaintiff asserts that on July 9, 2019, he saw Nurse Practitioner Karen Rose and renewed his request for hemorrhoid surgery. Rose purportedly told plaintiff that she used to work for a hemorrhoid surgeon, and she told plaintiff he was "better off just washing them and stuffing them back up his butt because surgery won't help – they will just come back." She allegedly said, "You will just have to learn to deal with the pain of hemorrhoids." Nevertheless, she decided to do an exam, and when she did so, she was very rough when doing the rectal exam. Plaintiff claims that even though he was in discomfort from his hemorrhoids she then told him, "You don't have any hemorrhoids. Just learn to not make a big deal about it. Don't act like a baby."

Based on the allegations as outlined above, the Court will issue process on plaintiff's Eighth Amendment claims for deliberate indifference to his serious medical needs against defendant Nurse Karen Rose in her individual capacity. The Court finds these allegations state a claim for the purposes of 28 U.S.C. § 1915 review.

### 2. Todd Renshaw

Plaintiff alleges that on August 24, 2017, Dr. Lovelace told him that he had five hemorrhoids, the largest being 5/8th of an inch in diameter, and four others measuring approximately 1/4th of an inch. Although he sought surgery for plaintiff, he was told that Corizon's Utilization Management Team denied the request.

Plaintiff claims that in 2015, he wrote to Corizon Medical Administrator, Todd Renshaw relating to the unfairness of constantly being denied "adequate and effective treatment for hemorrhoids", i.e., surgical intervention. Plaintiff also asserts that he complained to Renshaw in November of 2019 that there were referrals missing from his medical file for hemorrhoid surgery. He claims that Renshaw simply shrugged his shoulders.

Plaintiff asserts that on July 9, 2019, he renewed his request for hemorrhoid surgery. Plaintiff claims he saw Nurse Practitioner Karen Rose. Plaintiff claims that Nurse Rose also told him that all medical staff, including Todd Renshaw, had just met with the executive management of Corizon, and she allegedly told plaintiff that they were told, "if the inmate isn't dying don't issue anything that is a major cost."

Plaintiff alleges in his complaint that Todd Renshaw is responsible for making referrals to Corizon's Utilization Management Team for providing care when an inmate needs specialized treatment.

A prison official's deliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment. *Alberson v. Norris*, 458 F.3d

762, 765-66 (8th Cir. 2006). A prima facie case alleging deliberate indifference requires the inmate-plaintiff to demonstrate that he suffered from an objectively serious medical need and the "prison officials actually knew of but deliberately disregarded" that need. *Id.* Medical malpractice alone, however, is not actionable under the Eighth Amendment. *Smith v. Clark*, 458 F.3d 720, 724 (8th Cir. 2006). For a claim of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). Showing medical malpractice is not enough: "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Liberally construing plaintiff's complaint, the Court will issue process on plaintiff's Eighth Amendment claims for deliberate indifference to his serious medical needs against defendant Todd Renshaw in his individual capacity. It appears Todd Renshaw was aware of the amount of times plaintiff had sought treatment for his hemorrhoids, as well as surgery to treat his hemorrhoidal condition, yet he continued to deny care for that condition. The Court finds these allegations state a claim for the purposes of 28 U.S.C. § 1915 review.

### 3. Major Morgan and Correctional Officer Cliff

Plaintiff asserts that from he was forced to describe his medical complaints in front of other inmates and custodial staff in the waiting room prior to getting in to see medical personnel. Plaintiff claims that Major Morgan was in charge of the medical building area and she was responsible for scheduling correctional officers to that site. He asserts that Correctional Officer Cliff was one such officer assigned to the medical building who required plaintiff to tell him the exact details of what was wrong with him prior to allowing plaintiff to see one of the Corizon, LLC medical employees.

Plaintiff believes that this behavior, of describing his medical issues in front of other staff and inmates, was a violation of his "right to privacy" and was extremely humiliating.

The Court believes plaintiff is referring to the Health Insurance Portability Act of 1996 ("HIPAA") which requires the creation of national standards of care to protect sensitive patient health information from being disclosed without the patient's consent or knowledge. Assuming for the sake of argument that the defendants' conduct ran afoul of HIPAA, plaintiff's allegations against defendants Morgan and Cliff are still subject to dismissal, as HIPAA did not create a private right of action for violations of the Act. *Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010) (citing *Adams v. Eureka Fire Prot. Dist*., 352 Fed. Appx. 137, 139 (8th Cir. 2009); *Acara v. Banks*, 470 F.3d 569, 571-72 (5th Cir. 2006)); *see also Fogle v. Missouri Dept. of Mental Health*, 2008 WL 5234757, *2 (E.D. Mo. Dec. 15, 2008) ("Every court that has considered the issue has held that HIPAA does not create a private cause of action for violations of the act.").

Even if plaintiff is simply asserting a "right to privacy" under 42 U.S.C. § 1983, Courts have generally held that prisoners do not have a constitutionally protected expectation of privacy in prison treatment records when the state has a legitimate penological interest in access to them. *See, e.g., Beers v. Stockton*, 2000 W.L. 1839535, *1 (8th Cir.2000) (Medical information released to nurse at another jail where Beers had been transferred after he made representations regarding what medications he was taking. Jury could not conclude that "the release was made in bad faith or for reasons unrelated to the continuity of Beer's medical care and to prison security. Likewise, Stockton's release of medical information to [facility] non-medical personnel was related to penological concerns"); *see also Tokar v. Armontrout*, 97 F.3d 1078 (8th Cir.1996) (wherein the court addressed Tokar's argument that his constitutional right to privacy had been violated by his segregation in HIV-only unit but the Eighth Circuit disagreed with his assertions). As such, the

Court will dismiss plaintiff's individual capacity claims for relief against defendants Major Morgan and Officer Cliff.

### 4. Unknown Thomas

Plaintiff states that around 2016 he began to seek mental health assistance for "worsening depression." Although plaintiff does not indicate the date, he states that "he first saw Ms. Thomas, when she enrolled him in an Anger Management Program." Plaintiff does not indicate whether he enrolled in the program on a voluntary basis or if he was mandatorily enrolled.

Plaintiff claims that Ms. Thomas told him that each time he experienced depression and wanted help he would have to fill out a form with Corizon Medical. Plaintiff claims he told Ms. Thomas that her program was "inadequate" and dealt with anger and not depression.  He alleges that Ms. Thomas told him that in order to access individual counseling he would have to fill out a medical request form.

It appears plaintiff is asserting that Ms. Thomas acted with deliberate indifference to his serious health needs in violation of the Eighth Amendment. However, there is no indication that she failed to treat him for the program for which he was enrolled.

Plaintiff admits that Ms. Thomas told him that he was enrolled in an Anger Management Program and not in a program for depressed individuals. In fact, she told him how to access assistance for depression, through filing a service request through Corizon Medical. Plaintiff admits that he was able to access individual counseling through medical service requests, but he does not state whether he filed such requests with Corizon Medical.

Although plaintiff disagrees with his group treatment program, a mere disagreement with treatment decisions does not rise to the level of a constitutional violation. *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). He had a responsibility to seek out other treatment for his mental health if he felt the group treatment was not working, and he has not indicated that he

did so. Thus, the Court cannot say that Ms. Thomas should be held liable in this instance for deliberate indifference to plaintiff's mental health needs. *See Beck v. Skon*, 253 F.3d 330, 333-34 (8th Cir. 2001) (finding no deliberate indifference where a prisoner refused to comply with the recommended course of medical care).

Accordingly,

**IT IS HEREBY ORDERED** that that plaintiff's motion to proceed in forma pauperis [Doc. #2] is **GRANTED.**

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $95.96 within twenty-one (21) days of the date of this Order.  Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS HEREBY ORDERED** that the Clerk of Court shall correct the spelling of defendant Dr. Unknown Zorcoft to Dr. Unknown Zakroff.

**IT IS FURTHER ORDERED** that the Clerk shall not issue process or cause process to issue upon the complaint as to defendants Anne Precythe, Dr. Unknown Zakroff, Ms. Unknown Thomas, Nurse Unknown Adams, Ralph Salke, Major Unknown Morgan, Officer Unknown Cliff and John Does A-C because the complaint fails to state a claim upon which relief can be granted as to these defendants.

**IT IS FURTHER ORDERED** that the Clerk shall issue process or cause process to issue on plaintiff's claims against Nurse Karen Rose and Todd Renshaw in their individual and official capacities. These defendants shall be served through the waiver agreement the Court maintains with Corizon, LLC.

**IT IS FURTHER ORDERED** that plaintiff's claims for relief prior to July 2015 are **DENIED AND DISMISSED AS TIME-BARRED.**

**IT IS HEREBY CERTIFIED** that an appeal from this Order of Partial Dismissal would not be taken in good faith.

An Order of Partial Dismissal will accompany this Memorandum and Order.

Dated this 25th day of February, 2021.

_Ronnie L. White_
RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE